# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RAYMOND M. MARTINEZ,

      Petitioner,

v.                                                                            Civ. No. 18-559 JB/GJF

DWIGHT SIMS, Warden, and
HECTOR H. BALDERAS, Attorney
General for the State of New Mexico

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court[1] on Petitioner's pro se "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") [ECF 1] and Respondents' Answer [ECF 15].  Having reviewed the briefing and being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.

## I.  PROCEDURAL HISTORY

A New Mexico jury convicted Petitioner on two counts of first-degree criminal sexual penetration of a child under thirteen years of age and two counts of misdemeanor enticement of a child.  Ex. A at 1-3 (attach 1, 1-3).[2]  On appeal, relevant to the instant Petition, Petitioner argued that the trial court erred in admitting victim C.Q.'s in-court identification of Petitioner because C.Q. did not directly look at Petitioner but rather pointed in the direction in which the prosecutor

---

[1] U.S. District Judge James Browning referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF 9.  This Court has concluded that no evidentiary hearing is required or permitted.  *See* 28 U.S.C. § 2254(e)(2).

[2] The State's record was filed in four attachments with attachment one including exhibits A-N, attachment two including exhibits O-V, attachment three including exhibits W-BB, and attachment four including exhibits CC-HH. As the pages of these attachments are not individually numbered, the Court has included (for ease of reference) two separate page location numbers in each such citation.  For example, "Ex. TT at 2" refers to (unnumbered) page two of exhibit TT, and the parenthetical "(attach. 4, 80)" clarifies that this reference can be found on the 80th page (as designated by the ECF page stamp) of the overall attachment.

had stated Petitioner would be sitting.  Exs. D at 9-14 (attach 1, 19-24), F at 7-14 (attach 1, 41-48).

The New Mexico Court of Appeals ("NMCA") affirmed Petitioner's conviction, reasoning that

'Petitioner's challenge went to the "credibility and weight of C.Q.'s in-court identification" and

that it was therefore the "jury's duty as [sic] 'as fact-finder to resolve any conflict in the testimony

of the witnesses and to determine where the weight and credulity lay.'"  Ex. K at 8 (attach 1, 110)

(citation omitted).   The New Mexico Supreme Court ("NMSC") denied Petitioner's writ of

certiorari.   Exs. L (attach 1, 112-126) (writ of certiorari), M (attach 1, 127) (order denying

certiorari).

On August 23, 2011, Petitioner filed a 230-page *pro se* writ of habeas corpus in state court.

Ex. O (attach 2, 1-291).  By order of the state trial court, Ex. P (attach 2, 292), Petitioner through

counsel filed a condensed amended petition.  Ex. Q (attach 2, 293-311).  Petitioner argued that

trial counsel was ineffective for (1) "[f]ailing to have an expert testify about the credibility of eye

witnesses when the State's entire case was based upon such identification," and (2) "[f]ailing to

object to the tainted in-court identification of [Petitioner]; or to the trial court curing the question

of tainted testimony by impeachment."  Ex. Q at 2-3 (attach 2, 294-95).  After full briefing, *see*

Ex. R (attach 2, 312-316) (response), and an evidentiary hearing, *see* Ex. S (attach 2, 317), the trial

court denied the petition.  The trial court reasoned that trial counsel was not ineffective because

she "was aware of the [Petitioner's issue with the in-court identification] and raised an appropriate

motion in limine to address it," and once that motion was denied, "exercised before the jury

[P]etitioner's right of confrontation by cross examining the child about the circumstances in which

[the] child was in the courtroom prior to trial with the prosecuting attorney."[3]  Ex. T (attach 2, 318-

319).  Moreover, the court found that trial counsel, who had "represented over 2,000 clients in

_____

[3] Petitioner was represented at trial by Sydney West, Esq.

felony matters prior to [the] trial," did not violate *Strickland v. Washington*, 466 U.S. 668 (1984), when she consulted with but ultimately decided not to call an expert witness to testify during trial. *Id*.  In a one-page order, the NMSC denied the petition on September 21, 2017.  *See* Ex. V (attach 2, 330).

On November 17, 2017, Petitioner filed another *pro se* habeas petition.  Petitioner  again argued that trial counsel was constitutionally deficient for failing to (1) "timely file a pre-trial motion in limine" to prevent C.Q.'s in-court identification, (2) "object to suppress an alleged statement that was in-voluntarily [sic] [made by Petitioner] [and] admitted into evidence at the states [sic] request," (3) "properly investigate the basis for probable cause to arrest," (4) "retain a medical forensic DNA expert," (5) "object to the court's refusal to grant the jurors 4 [sic] notes requesting more information needed to review and decide and make a proper decision before deliberating," and (6) "object requesting removal and or mistrial for cause of bias juror."  Ex. W at 8-10 (attach 3, 8-10).  On January 11, 2018, the state district court summarily dismissed this petition as a second or successive petition under Rule 5-802 NMRA.  Ex. Y at 1 (attach 3, 21). The district court reasoned that, *inter alia*, save for ground six, Petitioner could have raised the alleged issues in previous proceedings, and that he nonetheless had failed to establish either prong of *Strickland*.  Ex. Y  at 1-3 (attach 3, 21-23).  The Petitioner again sought relief with the NMSC and the NMSC again denied certiorari.  *See* Exs. Z (attach 3, 25-43) (writ), AA (attach 3, 44) (order denying writ).

On June 15, 2018, Petitioner then sought review in this Court by filing the instant Petition.

## II.    FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), the Court presumes the factual findings of the NMCA are correct.  *See* 28 U.S.C. § 2254(e)(1); *Schriro v.*

*Landrigan*, 550 U.S. 465, 473–74 (2007).   The NMCA summarized the facts as follows:

> At trial, the victims testified to a nearly identical scenario that, when combined with Detective Wiggins' testimony, provided sufficient evidence to convict Defendant as the man who was responsible for sexually assaulting the victims. The boys testified as follows. C.Q. and V.P. were eight and seven years old, respectively, at the time of the assault.  It was summertime and they were hunting for grasshoppers while walking along an arroyo close to a home on Agua Fria where V.P. was living. The boys saw a man they did not know standing outside of a residence.  The man asked the boys if they would like to have some Kool-Aid, to which they responded in the affirmative.  The boys stayed outside and played with a cat while the man brought them Kool-Aid.

> The man said he was rebuilding his bathroom and asked the boys to come look at it.  C.Q. went into the house first; V.P. remained outside and continued playing with the cat.  C.Q. testified that the man took him to the bathroom, closed the door, showed him some tile, and took off C.Q.'s pants and underwear.  C.Q. stated that the man put his mouth on C.Q.'s "privates" and performed oral sex on him.  The man stopped and told C.Q. not to tell anyone and that he would give C.Q. fireworks if he kept their secret. C.Q. left the house and went to look for V.P., who he did not see until V.P. later left the bathroom.

> V.P. similarly testified that the man also asked him to go into the house, took him into the bathroom, closed the door, and told V.P. to pull down his pants.  The man put his mouth on V.P.'s "privates," and V.P. testified that it felt like the man was biting him.  When it was over, V.P. pulled up his pants, ran out of the door, found C.Q., and went back to the house where V.P. was living.

> Later that day, V.P. went to a scheduled doctor's appointment for a check up [sic] and, while his mother was undressing him, he told her about the sexual assault. V.P.'s mother contacted C.Q.'s aunt and guardian and told her to speak with C.Q. about what had happened.  The SANE nurse's testimony reflected that V.P. and C.Q. relayed the same stories to her during their separate examinations: they encountered a stranger at the arroyo who sexually assaulted them in a bathroom. Detective Wiggins, the supervising detective in the case, testified that the boys described the man who assaulted them as dark-skinned with a pock-marked face; crooked, bad teeth; and black, greasy hair.  The boys showed police officers the home near the arroyo where they said the assault occurred.

> Later, detectives returned to that house and found four men sitting at a table outside drinking beer.  Defendant was among the men sitting at the table.  Detective Wiggins testified that Defendant appeared to be somewhat intoxicated and that he was asking a lot of questions, talking closely with the detective, and demanding to know what the officers were investigating.  During the exchange, Defendant stated that he had been at the residence all day, and that Defendant had made contact with two little boys at the residence that day.  Defendant claimed that he, not the boys,

had been sexually assaulted.  Defendant explained to Detective Wiggins that the boys had asked him for water, that he had agreed, that he brought them inside, and that, when they were in the bathroom, the boys attempted to grab his penis. Detective Wiggins testified that, given the information he had received from the other investigators, the boys' statements, and their descriptions of the assailant, the detective thought he had probable cause to believe that Defendant was the man who assaulted the boys and placed him under arrest.  Detective Wiggins also testified that he saw that there was some kind of tile work being done in the kitchen area.

Ex. K at 3-6 (attach 1, 105-08).

## III.   CLAIMS PRESENTED

Petitioner advances eight separate theories as to why his trial counsel was ineffective.

Petitioner alleges counsel failed to:

(1) "retain an eyewitness expert."  Pet. 4;

(2)  object to C.Q.'s in-court identification.  *Id*.;

(3) "timely file a pre-trial motion in limine" to prevent C.Q.'s in-court identification.  *Id*. at 5;

(4)  object to "suppress an alleged statement that was in-voluntarily [sic] admitted into evidence at the states [sic] request."  *Id*.;

(5) "properly investigate the basis for probable cause to arrest."  *Id*.;

(6) retain a forensic DNA expert.  *Id*.;

(7) object to the trial court's "refusal to grant the jurors' 4 notes requesting more information needed to review and decided and make a proper decision."  *Id*.; and

(8) "request removal and or mistrial for cause of bias juror."  *Id*.

Respondents do not dispute that Petitioner has exhausted available state-court remedies as to all grounds for relief.  Answer 4 (citing Exs. O, Q, U, W, X).  Moreover, Respondents waive this requirement for all grounds.  *See id*.[4]  Therefore, the Court will address all eight grounds on

---

[4] *See also* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

the merits.

## IV.    APPLICABLE LAW[5]

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court decisions be given the benefit of the doubt." *Simpson v. Carpenter*, 912 F.3d 542 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by state courts." *Cole v. Trammel*, 735 F.3d 1194, 1199 (10th Cir. 2013).  When a petitioner includes in his habeas application a "claim that was adjudicated on the merits in state court proceedings," a federal court shall not grant relief on that claim unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Simpson*, 912 F.3d at 562 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotations and citations omitted).  "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its

---

[5] In this section, the Court sets forth the Congressionally-mandated legal standard for federal review of state criminal convictions, as that standard has been interpreted by the Supreme Court and Tenth Circuit.  The Court will include in its individual analysis of Petitioner's claims the substantive legal standard that governs each of those claims.

decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*.

Once a federal habeas court locates the relevant rationale, it then can determine whether the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Simpson*, 912 F.3d 542 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is specific, the range may be narrow," thus "[a]pplications of the rule may be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an unreasonable

application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; instead "that application must also be unreasonable." *Id*. at 411.

## V.   ANALYSIS

In analyzing Petitioner's eight grounds for relief, the Court will first examine Grounds One and Ground Two together as they both relate to the in-court identification issue. The Court will end its analysis by addressing Grounds Three through Eight as a single group.

### A.  Grounds One and Two

Petitioner asserts that trial counsel's failure to object to C.Q.'s in-court identification prejudiced his chance for an acquittal. Pet. 4. Petitioner also argues that trial counsel's failure to "retain an eyewitness expert" was constitutionally infirm. *Id*. As explained below, the Court finds that each prong of *Strickland*—reasonableness and prejudice—was thoroughly and reasonably addressed by the state courts.[6] The Court therefore recommends that relief be denied as to Grounds One and Two.

#### 1.  Legal Standard

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) ("It is past question that the rule set

---

[6] The state habeas court held an evidentiary hearing on these claims, *see* Ex. S, and issued a written opinion. *See* Ex. T. On direct appeal, the NMCA addressed the in-court identification issue in the sufficiency of evidence context. *See* Ex. K.

forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'").   To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88.   Courts "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).   This requires Petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   In the context of a jury verdict, the prejudice that a habeas petitioner must establish is that—but for counsel's unreasonable conduct—there is a reasonable possibility that the jury would have had reasonable doubt as to the conviction.   *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1912 (2017) (observing that "prejudice in the ordinary sense" is "a reasonable probability that the jury would not have convicted [the defendant]").

"Establishing that a state court's application of *Strickland* was unreasonable under

§ 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, . . .  and when the two apply in tandem, review is doubly so."  *Howell v. Trammell*, 728 F. 3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (internal citations and quotations omitted).  "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

### 2.  Performance of Trial Counsel

In denying Petitioner relief on Grounds One and Two, the state habeas court began and ended its analysis with reasonableness.  In support of its finding that Petitioner had failed to establish the first prong of *Strickland*, the state court considered "testimony produced as part of the proceedings, pleadings, and arguments made by counsel . . . ."  Ex. T at 1 (attach 2, 318).  This Court grants deference to the state court's fact finding—deference that Petitioner cannot overcome—and concludes that the state court reasonably applied *Strickland*.  Moreover, the NMCA addressed on direct appeal Petitioner's challenge to the in-court identification on sufficiency of evidence grounds.  Therefore, and although the NMCA did not apply *Strickland* on direct appeal, its reasoning nonetheless demonstrates that Petitioner cannot establish prejudice.

#### a.  Deficient Performance

Relying on *Strickland*'s teachings, the state habeas court concluded that Petitioner failed to demonstrate how counsel's performance fell below an objective standard of reasonableness.  Ex. T at 1-2 (attach 2, 318-19).  This Court agrees and gives deference to that conclusion.

To begin, the court first found that "[t]rial counsel was aware of the aforementioned

identification issue regarding the child victim and raised an appropriate motion in limine to address it with the trial court." *Id*. at 1.  The court further found that "trial counsel exercised before the jury [P]etitioner's right of confrontation by cross examining the child about the circumstances in which [the] child was in the courtroom prior to trial with the prosecuting attorney." *Id*. at 1-2.  Lastly, the court refused to second-guess trial counsel's decision not to call an identification expert.  Although trial counsel represented that "she ha[d] consulted with expert witnesses in identification" but "never [had] called one in an actual trial," the Court nonetheless deferred to her judgment because of her prior experience in "felony trials" where she had represented "over 2,000 clients in felony matters prior to trial." *Id*.  Thus, based on the record before it, the court held that the "first prong of the *Strickland*" test was not met. *Id.* at 2.

The AEDPA requires that a federal habeas court grant deference to a state court's reasoned decision unless it was contrary to Supreme Court precedent or it involved an unreasonable determination based upon the facts presented.  Neither occurred here.  The state court reasonably concluded under *Strickland*'s first prong that trial counsel adequately challenged C.Q.'s in-court identification through a motion in limine and cross-examination.   And, in light of the evidence and trial counsel's experience, the court reasonably found that trial counsel's decision not to call an identification expert was constitutionally sufficient.  Indeed, nothing in the record nor in Petitioner's Petition overcomes the presumption that this decision was reasonable.  *See Strickland*, 466 U.S. at 690 (strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment).  Rather, the record demonstrates a learned trial attorney's decision to forego controversial and potentially problematic expert testimony.

Therefore, the state court reasonably applied *Strickland*, as it is deemed to have done if

there is "*any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105 (emphasis added). For these reasons, the Court recommends that Grounds One and Two be denied.

### b. Prejudice

A court applying *Strickland* need not address prejudice if a petitioner fails to establish deficient performance. *See Ward*, 165 F.3d at 1292-93. Nonetheless, the Court addresses the NMCA decision merely to illustrate that Petitioner also cannot establish prejudice arising either from his trial counsel's failure to object to the in-court identification or her decision to forego presenting expert testimony on in-court identifications.

On direct appeal, Petitioner argued that "there was insufficient evidence presented that he was the man responsible for sexual assaulting the victims." Ex. K at 1-2 (attach 1, 103-04). Specifically, he challenged the evidence "regarding the victims' descriptions of the assailant and the scene of the crime, as well as the victims' identification of Defendant." *Id* at 2. In affirming Petitioner's convictions, the Court found that "the victims testified to a nearly identical scenario that, when combined with Detective Wiggins' testimony, provided sufficient evidence to convict Defendant as the man who was responsible for sexually assaulting the victims." *Id* at 3-4. When addressing Petitioner's argument that he was not the man responsible for the assaults, the court found that

> [e]ven though the boys did not give a perfect description of Defendant or of the residence where the assault occurred, the officers were able to find the residence and focus on Defendant. Defendant's statement to Detective Wiggins placed him with the boys in the bathroom at the residence. The boys' general and consistent descriptions of Defendant and of the residence in conjunction with Defendant's statement to Detective Wiggins constitutes sufficient evidence that Defendant was responsible for the assault.

*Id.* at 7-8. This reasoning alone demonstrates that Petitioner could not establish that, but for

counsel's alleged deficiencies in handling C.Q.'s in-court identification and the failure to introduce testimony from an expert witness, the result of the proceeding would have been different. Rather, it shows that two other witnesses offered sufficient testimony to sustain Petitioner's convictions irrespective of C.Q.'s identification or potential expert testimony.

Moreover, as the NMCA correctly noted, Petitioner's challenge to his in-court identification goes to "the credibility and weight of C.Q.'s in-court identification" and "it is the jury's duty as 'as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay.'" *Id.* at 8 (citation omitted). And the state habeas court found that the "[j]ury was properly instructed in the case." Ex. T at 2 (attach 2, 318). Consequently, the Court cannot conclude that, based on the other evidence presented at trial, there is a reasonable possibility that the jury would have had reasonable doubt as to the conviction simply because trial counsel failed to introduce an identification expert or further attack Petitioner's in-court identification. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1912 (2017) (concluding that petitioner had not "shown prejudice in the ordinary sense, i.e., a reasonable probability that the jury would not have convicted him"). For these additional reasons, the Court recommends that Grounds One and Two be denied.

### B.  Grounds Three Through Eight

Petitioner argues here that trial counsel was deficient because she failed to (1) "timely file a pre-trial motion in limine" to prevent C.Q.'s in-court identification, (2) object to "suppress an alleged statement that was in-voluntarily [sic] admitted into evidence at the states [sic] request," (3) "properly investigate the basis for probable cause to arrest.," (4) retain a forensic DNA expert, (5) object to the trial court's "refusal to grant the jurors' 4 notes requesting more information needed to review and decided and make a proper decision," and (6) "request removal and or

mistrial for cause of bias juror."  Pet. 4-5.  These asserted grounds for relief, however, did not appear in Petitioner's initial state habeas petition, which dealt only with Grounds One and Two above.  Rather, these asserted grounds appeared for the first time only in the second habeas petition filed by Petitioner.

The state habeas court summarily dismissed the claims pursuant to NMRA, Rule 5-802(I)[7] as a second or successive petition.  Ex. Y at 1 (attach 3, 21).  In addition, the court noted that Petitioner failed to attach supporting documentation to the successive petition and thus had "failed to present a prima facie case that would merit relief."  *Id*. at 2.  Consequently, the court found that Petitioner had "met neither prong" of *Strickland*.  The Court recommends that relief based on Grounds Three through Eight be denied for the reasons that follow.

If a "petitioner procedurally default[s] [asserted] claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citation omitted); *see Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (federal courts apply "the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) ("The [adequate state ground] doctrine applies to bar federal habeas [relief] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."))).

To overcome "[t]he doctrine barring procedurally defaulted claims from being heard . . . [a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and

---

[7] The state court's decision refers to Rule 5-802(I) as 5-802(H). The rule was amended, and the letters re-arranged, but the content of the rule for second and successive petitions remains the same.  Compare Rule 5-802(I) NMRA with Rule 5-802(H) NMRA (2017).

prejudice from a violation of federal law." *Martinez*, 566 U.S. at 10 (citing *Coleman*, 501 U.S. at 750). Similarly, "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman*, 501 U.S. 748.

New Mexico allows trial law courts to dismiss second and successive habeas petitions in most instances:

> Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
>
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
>
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

Rule 5-802(I) NMRA.[8]   Because the second state habeas court dismissed Petitioner's 2017 petition in accordance with this rule, Petitioner must establish cause and prejudice for this Court to review the merits of Grounds Three through Eight. Petitioner establishes neither as to any of these grounds.

"In order to satisfy the 'cause' standard, Petitioner must show that 'some objective factor external to the defense' impeded his compliance with New Mexico's procedural rules." *Watson v. State of N.M.*, 45 F.3d 385, 388 (10th Cir. 1995) (citation omitted). Before the state habeas court, Petitioner argued that he failed to present these grounds for relief on direct appeal "because

---

[8] As Respondent correctly notes, a New Mexico habeas court "[i]n exercising its discretion . . . should consider whether the prior petition was pro se or the petitioner was represented by counsel. Petitioners proceeding pro se will often not have developed their claims as fully as petitioners represented by counsel." *Id.* (Committee Commentary for 2014 Amendments). In exercising that discretion in this case, the state habeas court found that, with respect to Petitioner's first petition (1) "Petitioner was appointed counsel," (2) "filed an amended petition," and (3) "was granted an evidentiary hearing." Ex. Y at 2 (attach 3, 22). Consequently, the second state habeas court concluded that dismissal was warranted under the rule  This Court agrees.

the trial court did not preserve the issues stated in th[e] petition" and that he failed to present them in the previous habeas petition "because the prior habeas attorney raised his own issues."  Ex. Y at 2 (attach 3, 22).

A petitioner can overcome default in limited circumstances by alleging ineffective assistance of habeas counsel.  *See Martinez*, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").  This limited exception is inapplicable here, however, because New Mexico does not bar ineffective assistance claims on direct appeal.  *See State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134, 149 ("In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense.").  Moreover, as the second state habeas court found, the "issues [had been] raised in previous proceedings in the courts."  *Id*.[9]  The court also noted that Petitioner did not attach any documents that supported the new claims.  *Id*. at 3.  The court concluded that Petitioner had "failed to present a prima facie case that would merit relief" and that he "met neither prong" of *Strickland*.  *Id*.  The instant petition is even more deficient as Petitioner has made no showing or allegation that he has met the cause and prejudice requirement.

Petitioner also cannot demonstrate a fundamental miscarriage of justice because he has not submitted new evidence of factual innocence.  *See Foster v. Smith*, 429 F. Supp. 3d 940, 962

---

[9] The court did note that Petitioner's argument that counsel failed to request the removal of a biased juror had not been raised previously.

(D.N.M. 2019) ("To demonstrate a fundamental miscarriage of justice, a petitioner must make a colorable showing of factual innocence.  A claim of factual innocence requires a petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." (internal quotations and citations omitted)).

Consequently, Petitioner cannot overcome the procedural default hurdle and, therefore, the Court recommends Grounds Three through Eight be denied on this basis.  *See James v. Smith*, No. CIV 17-0360 JCH/KBM, 2018 WL 1033197, at *3 (D.N.M. Feb. 22, 2018) (adopting PFRD recommendation that petitioner procedurally defaulted when habeas court dismissed petition under Rule 5-802).

## VI.   CONCLUSION

For the reasons detailed above, it is **RECOMMENDED** that Petitioner's "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" [ECF 1] **BE DENIED**.

The Court further **RECOMMENDS** that, pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts, a certificate of appealability be **DENIED**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**